## S. W. LAND VS. W. L. KEIRN.

1. JUDGMENT: *Conclusiveness thereof.*
    The general rule is that a judgment or decree is conclusive between parties and privies. It is conclusive both as to the law and fact in issue, and it is immaterial whether the final decision was rendered by a court of law or equity. It is conclusive, not only of the rights of parties in the particular suit, but of every fact which is affirmed positively or by necessary implication. But that

the one or the other may become effective as a plea in bar, or, where that is not admissible, conclusive in evidence, the fact must have been directly in issue.

2. SAME: SAME:

A fact in issue is that upon which the plaintiff relies and avers a cause of action, and which the defendant denies or admits by his pleadings. Collateral matters, which either party may offer in evidence to establish the controverted issue or fact, are not facts in issue.

3. DANCING RABBIT TREATY: *Reservation thereunder.*

A reservation under this treaty separates the land reserved from the public lands, and operates as a grant to the reserve, which takes effect upon the particular parcel, when specified and located, as completely as if the treaty had assigned the particular parcel. The grant being complete in itself, a patent is unnecessary, and a patent which attempts to convey land previously reserved or appropriated is void.

4. SAME: *Registry. Removal.*

The application to register satisfies the treaty, although the agent may fail to do his duty. In order to work a forfeiture by removal from the land within the five years, the removal must be voluntary and not forcible.

ERROR to the Circuit Court of *Holmes* County.

Hon. W. B. CUNNINGHAM, Judge.

*A. H. Handy*, for plaintiff in error:

The court erred in excluding as evidence copies of certificates, reports, and documents from the land office at Washington. 1st. It was admissible, as a deposition taken in pursuance of the agreement of counsel. The answers were sworn to by the witness, acting commissioner of the general land office. See Code of 1871, § 799. No objection can now be made, except for incompetency or irrelevancy. 2d. The deposition was competent, *as a whole*, to show the action of the department having jurisdiction under the treaty of Dancing Rabbit creek. Art. 3, Rev. Code, 1857, p. 707. It was proper to show a refusal by that department to grant to the parties under whom defendant claims, and had never been granted to any of them, and that it had been sold by the United States to plaintiff, to whom a patent had been issued. By several acts of Congress, collected in Brightley's Dig., 476–7, the commissioner of the general land office had power to determine cases of suspended entries, and in what cases patents should issue. The

records show, by the deposition offered, that the tribunal offered by the act of Congress to adjudge the matter of right and title to the lands in controversy, so far as to direct the title of the United States, rendered their "adjudication" in due form of law, as shown by the copies exhibited with the deposition. This power has since been transferred to the interior department, and approvals are now made by the secretary of the interior. 1 Brightley's Dig., 441, §§ 3–5. If the evidence was not proper as a deposition, the documents were evidence as certificates from the land office. See Acts of Congress, Brightley's Dig., *supra*. It was admissible to show title, under Code of 1871, § 808.

The court erred in refusing the 1st and 2d instructions asked by plaintiff. Sweatt *v.* Corcoran, 37 Miss., 515, 516.

The 3d and 8th were correct, under the evidence. The equitable claim of defendant was no defense in this action, when plaintiff showed a clear legal title. Moody *v.* Farr, 33 Miss., 210 ; Lockhart *v.* Camfield, 48 ib., 454, 455 ; Thompson *v.* Wheatley, 5 S. & M., 499 ; Code, 1857, p. 388, art. 17 ; Rice *v.* Wright, 46 Miss., 680. The quit-claim to Charles Land's heirs, in 1849, did not affect the rights acquired by purchase and patent in 1870. 37 Miss., 578 ; Sug. on Ven., 556 ; Code of 1857, § 309, art. 17 ; 2 How., 601.

The 4th instruction asked by plaintiff was erroneously refused. The United States held title under the 3d article of the treaty of Dancing Rabbit creek until patent issued. 13 Pet., 450 ; 37 Miss., 516. The issuance of the patent is conclusive, except for fraud or mistake. Foley *v.* Harrison, 15 How., 450, 451.

The motion for a new trial was improperly overruled. The case depended on the question of legal title in the plaintiff. This was shown by the patent. It was error to allow defendant to read the record in evidence, or the quit-claim.

*J. A. P. Campbell,* for defendant in error :

The gravamen of the bill in chancery was that the land was a reservation, under the 14th article of the treaty of Dancing

Rabbit creek, in favor of Betsy Beames, or Istouché, and that *her right had become absolute by compliance with the conditions of the treaty.* This was the *precise point in dispute* in that litigation. While the object of the bill was to vacate the claim under Doak's float, it was only by virtue of a valid title in the reserve that complainants had any standing in court adverse to Doak's float. If that decision be correct, and the facts true as affirmed, *no title vested in plaintiff,* because *the United States had no title, and could grant none by its patent,* and the *patent is void because there was nothing for it to operate on.* Newman *v.* Harris, 4 How., 522 ; Niles *v.* Anderson, 5 ib., 365 ; Coleman *v.* Tish-ho-ma, 4 S. & M., 40 ; Hit-tuck-ho-mi *v.* Watts, 7 ib., 363 ; Ray *v.* Doe, *ex dem.,* 10 ib., 452 ; Dixon *v.* Porter, 23 Miss., 84 ; Clements *v.* Anderson, 46 ib., 581 ; Polk's Lessee *v.* Wendell, 9 Cranch, 87 ; Same *v.* Same, 5 Wheat., 293 ; Stoddard *v.* Chambers, 2 How. (U. S.), 284 ; Easton *v.* Salisbury, 21 ib., 426 ; Richart *v.* Felps, 6 Wall., 160 ; Best *v.* Polk, 18 ib., 112. That the *locus in quo* was a reservation under the treaty, and *never the property of the United States,* the decree is conclusive, as to all facts involved in or affirmed by it. Duchess of Kingston's Case, 2 Smith's Leading Cases, 573 ; Freeman on Judgments, § 249 ; Agnew *v.* McElroy, 10 S. & M., 552 ; Bidgelow *v.* Winson, 1 Gray, 299 ; Kilheffer *v.* Kerr, 17 S. & R., 319 ; Outram *v.* Moorwood, 3 East, 345 ; Gray *v.* Doherty, 25 Cal., 272 ; Caperton *v.* Schmidt, 26 Cal., 493 ; Garwood *v.* Garwood, 29 Cal., 521 ; Parish *v.* Ferris, 2 Black (U. S.), 606. The test of conclusiveness is that the question in controversy in the second suit was litigated and decided in the first, or might have been. Freeman on Judgments, § 259 ; 10 S. & M., 552, *supra;* 6 Wheat., 109. The evidence exists in the decree produced, which is competent and conclusive. Parker *v.* Standish, 3 Pick., 288. The decision of the departmental officials that the land was not a reservation amounts to nothing. It simply determined their action as to issuing the patent. It could not affect the rights of this defendant, who was not a

party to it.   Shelton v. Keirn, 45 Miss., 106–109 ; Johnson v. Towsley, 13 Wall., 72 ; Walsh v. Lallande, 25 La. An., 188. Defendant was not required to, nor could he, plead estoppel. The only plea in ejectment, except as to improvements, is the general issue.   Hutts v. Thornton, 44 Miss., 166 ; Cowen & Hill's Notes to Phillips on Ev., note 558, p. 322.

Although a prior judgment may be no *bar*, strictly and technically speaking, where the cause or object of both actions are not identical, it does not follow that either party in the second action can be allowed to *contradict what was expressly adjudicated in the first*.   Betts v. Starr, 5 Conn., 550-553 ; Hopkins v. Lee, 6 Wheat., 109 ; Dennison v. Hyde, 6 Conn., 508 ; Coit v. Tracy, 8 ib., 268.   A judgment upon a particular point, though not a bar to a second action, is *conclusive evidence*. Cowen & Hill's Notes to Phillips on Ev., note 587, p. 333 ; 5 Conn., 550-554 ; 1 Pet. C. Ct., 198-202 ; 1 Nott & M. (S. C.), 329 ; 3 Cow., 120 ; 4 Wend., 284-288.

SIMRALL, J., delivered the opinion of the court.

The plaintiffs in ejectment claim the land under a purchase by Silas Land, at the United States land office in Jackson, in 1860, and a patent issued in 1871.   The defendants resisted that title, and attempted to show that it was void and inoperative, by the production in evidence of the transcript of the proceedings and decree of the superior court of chancery, at the suit of the heir of Charles Land against the heirs of Thomas Land, deceased, of whom the patentee Silas was one, asserting title, among other things, to the whole of sec. 21, town. 16, as the reservation of Istouché, or Betsy Beames, a Choctaw woman, and head of a family, and that her title was vested, by purchase, in Charles Land, their ancestor, in equity, by a bond to convey or by absolute deed, and that the ancestor of the defendants had beclouded it by locating on the eastern half of the section a float, issued under the same treaty to one Doak, who was a white man and a resident trader among the Indians.   The prayer was to establish the

title of the complainants, and cancel and displace that of the defendants as a cloud upon it.

The final decree recites that, " it appearing to the satisfaction of the chancellor that complainants have an equitable title to sec. 21,·t. 16, r. 1 west, which they derive as heirs of Charles Land, deceased, from a purchase made by him in his life-time of Istouché, who acquired title to said section as the head of a Choctaw family, under the provisions of the 14th acticle of the treaty ;   *   *   *   and it further appearing that the purchase money was paid, and the bond for title has been lost ; and it further appearing that the defendants, heirs of Thomas Land, claim the east half of the section, under a float granted by the supplement to the treaty, and located on the east half of the section ; therefore, the court adjudges that the complainants, heirs of Charles Land, are entitled to sec. 21, and a commissioner is appointed to convey by quit-claim to complainants all the right, title, and interest of the defendants, representatives and heirs of Thomas Land, deceased, acquired under the float."

To the admission of this transcript in evidence the plaintiffs objected — not for any formal reason, but because it was incompetent as furnishing any defense.

It is conceded that this decree would conclude the plaintiffs from the assertion of any right to the *locus in quo*, under the float issued to Doak under the supplement to the treaty, and which Thomas Land, his assignee, had located on the eastern half of the section, and they insist that they are no further estopped and concluded than that. The decree merely required a surrender by quit-claim of that title ; and it is claimed that, under the law then in force (1846), such deed did not preclude Silas Land from the subsequent acquisition of a paramount title, and that his entry of the land in 1860, and the issuance of the patent in 1871, was of that character.

The general rule is that a judgment or decree is conclusive between parties and privies. There is no difference in this respect whether the final decision was rendered by a court of

law or equity. It is conclusive both as to the law and the fact in issue. Thus, a decree dismissing a foreclosure bill because the mortgage is void is a complete defense to the action of ejectment brought by the mortgagor. Smith v. Kernockes, 7 How. (U. S.), 198. The judgment was put on the ground that the decision of a court of concurrent jurisdiction directly on the point is, as a plea, a bar; or, as evidence, conclusive between the same parties or privies, upon the same matters, when directly in question in another court. In Hopkins v. Lee, 6 Wheat., 109, a bill was filed by Hopkins charging that he had been obliged to remove a certain incumbrance, and claiming repayment. The answer denied the allegation and the decree confirmed the report of the master, finding that the defendants' funds had paid off the incumbrance. The finding of the fact was conclusive in a subsequent action at law. Adams v. Barnes, 17 Mass., 365, was a case where the vendee of the mortgagor sued in ejectment to recover the premises from the mortgagee, on the ground that the mortgage was void for usury; but it was held that the plaintiff was concluded, because the same fact had been litigated, and decided in favor of the mortgagee, in a suit between him and the mortgagor. So, when the defense of usury is made to the note, unsuccessfully, the mortgagee can not re-litigate that question in an ejectment by the mortgagor against him. Betts v. Starr, 5 Conn., 550.

The decree or judgment is not only conclusive of the rights of parties in the particular suit, but of every fact which the judgment or decree affirms positively, or by necessary implication.

But that the one or the other may become effective as a plea in bar, or, where that is not admissible, conclusive in evidence, the fact must have been directly in issue. 1 Greenl. Ev., § 528. As said in Outram v. Moorewood, 3 East, 354, "the estoppel precludes parties and privies from contending to the contrary of that point or *matter of fact* which, having once been distinctly put in issue by them, or those to whom they are privies

in estate or law, has been, on such issue joined, solemnly found against them."

What matters of fact were put in issue in the chancery suit? The complainants charged that Istouché was the head of a Choctaw family; that she elected not to remove from the ceded territory with her tribe, but to remain here and take the benefit ·of the 14th article of the treaty; that she applied to the agent, Ward, to be registered; that she resided upon the 21st section five years continuously, except when forcibly ejected for a short time; that she sold to Charles Land, the ancestor of the complainants, who paid the consideration money. These facts constituted their cause of action, and, if they were not found to be true, manifestly they had no claim which a court of equity would recognize, and certainly no right to contest with the heirs of Thomas Land the location of the Doak float upon the section. The decree finds these facts to be true, and, upon that predicate of equity, ordered an abandonment or surrender of this pretense of title as a cloud upon the superior title of ·the complainants.

It may be true, as argued for the plaintiffs in this court, that the quit-claim deed did not preclude Silas Land from purchasing a title to the same land, and asserting it against the tenants in possession, subject, however, to this condition, that he ·could not, in order to vindicate such title against the vendees of the heirs of Silas Land, be permitted to gainsay any fact or facts found by the chancery decree, to which he was a party. Of these facts were, that Istouché was an Indian reservee resi·dent upon the 21st section, and had perfected her title and ·assigned it for value to Charles Land, as averred in the pleadings and found by the decree. The effect was to conclude him from the asserting that the land had not been specifically ·granted to her by the treaty, and that estoppel, to have its full effect, would preclude him from dealing with the United States, on the assumption that the land was unappropriated, .and therefore subject to sale by the government.

But it is said that the United States is not bound by the decree, not having been a party to it. That is true. There is. no doubt that if the government had sold to a stranger to the chancery suit, and these plaintiffs in error were defending· his title, the decree would not have been evidence of any fact put in issue, and found by it; but it would have been in-· cumbent on the defendants who hold under Istouché to have. proved affirmatively that she was a reservee under the treaty.

If it had not been established by proof that Istouché had a residence on the land, and that she had applied to the agent, Ward, to register, and that she had resided five years upon the· premises, then, within the sense of the treaty, the land would have been "unoccupied," and the location of the float upon the eastern half would have been valid. The heirs of Thomas. Land, the assignee of Doak, set up in their pleadings that Istouché did not reside upon the land for the five years, and that the agent did not register her. But the chancellor found that it was proved that she did so reside upon it, and that she signified to the agent a purpose to remain and claim her reservation, and if he refused to register her she should not lose her rights from his failure to do his duty. She had done everything required of her when she gave the notice and made·' the application to the agent. Land v. Land, 14 S. & M., 99.

If the question of readjudication were out of the case, as. between the heirs of Charles and Thomas Land, and some stranger had bought the land from the United States and received a patent, it is manifest, if the assignees could prove the facts alleged in the bill and found by the decree to be· true, that such patentee would fail to recover, for the reason that the United States had no title, and of course could pass. none by patent.

And that illustrates the different position occupied by Silas Land towards the assignees of Charles Land, from that which. a stranger who may have bought from the government would sustain. In an ejectment by the latter the chancery proceed--

ings and decree would not be competent evidence of any facts in issue, but the defendant would be driven to prove all the facts that constituted Istouché a reservee and completed her right under the treaty. But in a similar controversy between the heirs of Charles and Thomas Land or their privies, these proceedings and decree dispense with original testimony of these facts, and become conclusive evidence, by way of estoppel, of their truth.

The estoppel works, not only where the subject-matter is in all respects the same, but where the point comes in issue incidentally in relation to a different matter. Gray v. Dougherty, 25 Cal., 272. It applies to facts directly in issue, and not matters which are collateral and are only evidence of them. A fact in issue is that upon which the plaintiff relies and avers as cause of action, and which the defendant denies by his pleadings, or admits, and not those collateral matters which either party may offer in evidence to establish the controverted issue or fact. King v. Chase, 15 N. H., 16.

Whether Istouché had a title to the land under the treaty was directly involved and decided in the chancery suit. We think that the plaintiffs in error, privies in estate with Silas Land, are estopped from affirming or claiming that the land had not been appropriated to her, and are also estopped from setting up a title which is founded in a denial of that fact.

The character of title which a reservee acquired under the treaty has been several times passed upon. A reservation sets aside the thing reserved for some particular use or purpose, and whenever a tract of land shall be legally appropriated to any particular purpose, it becomes separated from the public lands. Wilcox v. Jackson, 13 Pet., 498. And in Graves v. Nicholson, 9 How. (U. S.), 356, it is held that a reservation to a particular Indian is an exception out of the grant to the United States, and creates a title in the Indian.

The import of the cases in our books is that the treaty operates as a grant to the reservee, which takes effect upon the

particular parcel when specified and located, quite as complete as if the treaty itself had assigned the particular parcel. Niles *v.* Anderson, 5 How., 382; Wray *v.* Doe, 10 S. & M., 383; Harris *v.* McKisnik, 37 Miss., 469; Minter *v.* Shirley, 45 ib., 387.

The grant being complete in itself by the treaty, a patent is unnecessary. Newman *v.* Harris, 4 How., 560; 7 S. & M., 366; Best *v.* Polk, 18 Wall., 117.

In Wray *v.* Doe, *ex dem.*, etc., 10 S. & M., 461, it was held that a subsequent patent covering the land of an Indian reservee was void, and would be so regarded in a court of law. That doctrine results from the general rule, which has had frequent recognition by the Supreme Court of the United States, that a patent is void which attempts to convey land previously granted, reserved, or appropriated. Stoddard *v.* Chambers, 2 How. (U. S.), 284; Richard *v.* Phelps, 6 Wall., 160; 10 Pet., 663.

In order to make a forfeiture by removal from the land within the five years, the removal must be voluntary and not forcible. 10 S. & M., *supra;* 8 Yer., 461; 5 ib., 343. The application to register satisfies the treaty, although the agent may fail to do his duty. Coleman *v.* Tish-ho-ma, 4 S. & M., 46.

It was not error to admit the transcript of the chancery suit and decree in evidence.

The plaintiffs in error advance the proposition that the vendees of the heirs of Charles Land had not an equitable title, which cannot, except in cases like Lockhard *v.* Camfield, 48 Miss., 484, and Thompson *v.* Weathersby, 5 S. & M., 499, be set up to defeat the legal title vested by the purchase of Silas Land in 1860, and the patent in 1871.

The legal title will prevail in the action of ejectment unless the defendant has a complete equitable title sufficient to draw to it the legal title. Cases cited.

But, in the view which we have taken of the chancery decree,

Silas and his privies are estopped to deny that Istouché held the land by grant under the treaty—that is, by legal title. In so far as they are concerned this legal title is still outstanding in her heirs, with a complete equity in the assignees of the heirs of Charles. If that be not so, it was vested by the decree in the heirs of Charles. For Ann, the daughter of Istouché, and her husband, were parties to that suit, and the naked title which was cast upon her by inheritance was directed to be vested in the complainants therein.

The commissioner, in addition to conveying by quit-claim deed the interest of the heirs of Thomas Land, deceased, was also to convey the right, title, and interest of defendant Sims, and wife, acquired by descent to Ann, Mrs. Sims, the daughter and heir of Istouché.

The estoppel goes to the extent of concluding Silas from denying Istouché's title, but also from asserting that the United States had any right, as against her, which he could acquire.

The copies of documents and papers, etc., attached to the depositions which were excluded, as transcripts from the records of the general land office, were of no value as proofs. They did not bind the rights of Charles Land's heirs or of his assigns. If their title was good, at law or in equity, the opinion or the decision of these officials could not defeat it. Shelton v. Keirn, 45 Miss., 106 ; Johnson v. Townsly, 13 Wall., 72.

These views meet and apply to the objections taken by counsel for plaintiffs to the rulings of the circuit court, in their prayers of instructions, and make it needless to consider them *seriatim*.

We think the decree right. Wherefore the judgment is affirmed.

Mr. Justice CAMPBELL, having been of counsel, takes no part in this decision.